**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**

| | |
|---|---|
| **Edward Butowsky,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No.: 4:21-cv-00774** |
| ) | |
| **U.S. Department of Justice and U.S.** ) | |
| **Department of Homeland Security,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## DECLARATION OF KARA CAIN

I, Kara Cain, declare the following under 28 U.S.C. § 1746:

1.      I am an Attorney-Advisor with the Freedom of Information Act/Privacy Act ("FOIA/PA") staff of the Executive Office for United States Attorneys ("EOUSA"), United States Department of Justice ("DOJ"). In my capacity as Attorney-Advisor, I act as a liaison with other divisions of DOJ in responding to requests and litigation filed under both FOIA, 5 U.S.C. § 552, and the Privacy Act of 1972, 5 U.S.C. §552a. I also review FOIA/PA requests for access to records located in this office and the 94 districts of the United States Attorneys' Offices ("USAOs") and the case files arising therefrom, review correspondence related to requests, review searches conducted in response to requests, and prepare EOUSA responses to ensure compliance with FOIA/PA regulations, 28 C.F.R. §§ 16.3 *et. seq.*, §§ 16.40 *et seq.*, and 5 U.S.C. § 552.

2.      Due to the nature of my official duties as Attorney-Advisor, I am familiar with the procedures followed by this office in responding to Plaintiff, Edward Butowsky. Additionally, I have reviewed the complaint which this Declaration addresses.

3.      The purpose of this declaration is to provide the Court with EOUSA's rationale for its general policy of reviewing 350[1] pages per month for any given matter and is submitted in support of EOUSA's position that this standard processing rate should be used if a production schedule is entered.

4.      EOUSA's FOIA/PA staff is tasked with the review and processing of material responsive to a FOIA/PA request that is in any of the 94 USAOs across the nation.[2] As a matter of general policy, EOUSA estimates that its capacity for processing records for any given litigation matter is 350 pages per month.

5.      EOUSA's policy derives from and/or is EOUSA's effort to comply with the Department FOIA regulations at 28 C.F.R. § 16.5(b) (regarding prompt disclosure of responsive material upon payment of any applicable fees). The rationale for EOUSA's policy concerning the processing of 350 pages a month is three-fold.

a.      First, the policy is based on sound FOIA business practice. FOIA encourages agencies to develop multi-track processing with the goal of responding to more requests. Accordingly, EOUSA uses a four-track system to fairly assign and process new requests. This "multi-track" processing system sorts requests based on the amount of time and work involved in handling a particular request.[3] In order to ensure fairness to all requesters and to equitably administer the deluge of FOIA/Privacy Act requests received by EOUSA or its

---

1 EOUSA FOIA/PA is currently engaged in a review of its FOIA and litigation obligations to determine if its 350-page processing capacity should be lowered in order to ensure that all matters are handled as expeditiously as possible.

2  Requests for access to records under FOIA should be directed to the component of the Department which maintains the records.  *See* United States Attorneys' Manual 3-17.100.  Requests for records of United States Attorneys' Offices or concerning activities of the United States Attorneys should be immediately forwarded to the Executive Office for United States Attorneys.  *Id.*

3 *See* 5 U.S.C. § 552(a)(6)(D)(i) and 28 C.F.R. § 16.5(b).

USAOs on an annual basis, a request is labeled as either a "simple"[4] or "complex"[5] request. This standard operating procedure, coupled with EOUSA's "first in, first out" policy, permits EOUSA to address requests in the order in which they were received, while simultaneously obviating the inequities to those requesters whose interests relate only to a small number of documents.

b.      Second, the policy promotes both EOUSA and requester efficiencies. EOUSA processes responsive records in 350-page increments, meaning that a number of pages are reviewed for release, security protocols are run (*see* 6(c) *infra),* a response is prepared, and an interim release is mailed or electronically transmitted to the requester. Then, the next 350 pages are reviewed and prepared for release or withholding pursuant to an applicable exemption or as duplicative. This continues until all responsive pages are processed. By working in these increments, EOUSA has found that more pages get processed, reviewed, and released to more requesters each month. In terms of managing workflow, the interim releases can be assigned to multiple processors and the 350-page size has proven to be ideal for reviewing officials, subject matter experts, and other components or agencies that must be consulted in some cases before a release determination can be made. Moreover, maintaining a steady interim release posture is key in meeting the demands posed by the growing number, size, and complexity of FOIA/PA requests received by EOUSA.

c.      Third, the processing policy enables the Department to maintain proper information security. Many of the Department's records contain classified information requiring the Department's FOIA/Privacy Act requests to be processed on a classified computer network.

---

4 "Simple" requests are requests that an agency anticipates will involve a small volume of material or which will be able to be processed relatively quickly. "Simple" requests are cases containing 50 pages or less.
5 "Complex" requests typically seek a high volume of material or require additional steps to process such as the need to search for records in multiple locations.

Thus, when a CD is prepared for release after review and consultation, it must also undergo a multi-step information security review. Due to the security requirements, the 350-page size has proven ideal in maintaining a steady release flow. The running of these security protocols, and resolving any issues that may arise, requires more effort and time as more pages are added; therefore, putting more pages on each CD would impose additional security protocol burdens and slow processing time.

6.      In EOUSA's experience, the 350-pages per month work-flow size has proven ideal as it allows for a steady flow of information to the public at large. The 350-page incremental size enables a manageable monthly production rate because it allows for the processing of the material by an analyst, review time, and the application of the Department's information security protocols that must be followed before the Department's information can be made public.

7.      All three of the above-mentioned factors work together to form the basis of the EOUSA's policy. In addition to this policy, there are other factors affecting the Department's ability to process Plaintiff's request at an accelerated rate. Those factors are explained in detail below.

### OTHER FACTORS AFFECTING THE PROCESSING OF PLAINTIFF'S REQUEST

#### A.  *Volume and Complexity of Incoming Requests*

8.      Since 2009, because of new Department guidelines and the public's increasingly sophisticated implementation of FOIA/PA, the average size of requests assigned to EOUSA for processing has increased drastically. This has correspondingly increased EOUSA's workload. The number of FOIA/PA requests EOUSA has received since FY2014 have fluctuated, but have trended up. Currently EOUSA has a backlog of 2,390 requests as of June 1, 2022. Since October

2, 2021 we have received 1,683 new requests. We have 132 open litigations, 252 open appeals, 118 open consultations to other government agencies and DOJ components. Many consultations are also in active litigation and have their own court ordered deadlines. Our office also has 211 open referrals.

9.      In addition to the increase of FOIA and Privacy Act requests, the requests themselves are more complex. Many of the requests which the EOUSA receives today are no longer simple, relatively straightforward, first-party requests from individuals seeking investigative records about themselves, *e.g.,* a request for a single bank robbery file. Rather, many of the requests contain numerous and/or multi-faceted subjects and often significantly more responsive pages per request than in previous years.

10.      The total number of pages responsive to a request proportionally impacts—and dramatically affects—the complexity of the FOIA processing required as well as the resources and time needed to respond to a particular request. As the number of pages potentially responsive to a request increases, the work and complexity associated with responding to a request proportionally increases as well. It also increases the likelihood of referrals (for either consultation or direct response) to other department components and agencies, the need for internal reviews, declassification considerations, and the time associated with page-by-page, line-by-line, word-by-word review of all potentially responsive material to determine what can be released and/or withheld. Thus, EOUSA employs a work-flow policy of 350 pages per month reviewed. *See* ¶ 5, *infra.*

### *Litigation Demands*

11.      Besides the demand posed by the complexity and significant volume of requests, there is a constant litigation demand imposed by those requests that become the subject of

judicial complaints. As the volume and complexity of routine FOIA/PA requests increase, so increases the likelihood of related litigation. As of June 7, 2022, EOUSA has a total of 132 pending litigations across the nation. Many of these matters compel EOUSA to meet court-ordered or stipulated production deadlines and page counts. Each additional production schedule further limits the office's capacity to produce records on a month-to-month basis to comply with those existing obligations. Further exacerbating this increase in pending litigations, the litigations themselves have mirrored the trend seen in the FOIA requests recently received by the EOUSA—they have increasingly become larger and more complex.

### *Finite Resources and Workflow Management*

12.     EOUSA's FOIA/PA unit currently has 27 professionals on staff, including administrative staff (5), Government Information Specialists ("GIS") (11), and Attorney-Advisors (11), who are dedicated solely to processing FOIA/PA requests for records maintained by EOUSA or one of its USAOs and any related litigation.

13.     Besides the increase in volume and complexity of requests and litigation demands, it is difficult for EOUSA to adhere to and comply with the FOIA's statutory and regulatory requirements for processing records in a manner equitable to all requesters. The same personnel who work to comply with numerous litigation deadlines are the same individuals working on the administrative FOIA requests, referrals, and remanded appeals. As such, any raise in litigation related processing means a commensurate reduction of records processing in response to requests from other citizens who chose not to litigate. This fact requires a careful balancing of resources and priorities among both litigation and administrative requests. To achieve an equitable program balance and fulfill its statutory obligation to all requesters, for requests in the "complex" queues, EOUSA employs a work-flow policy of 350 pages per month

reviewed. As noted, this standard work-flow policy is a sound business practice that provides more information to more requesters and litigants across all processing queues—regardless of queue size—thereby preventing a system where a few requesters can monopolize EOUSA's finite resources at the expense of requesters in smaller processing queues. Moreover, the standard work-flow policy promotes both agency and requester efficiencies.

## **CONCLUSION**

14.     EOUSA has determined that altering its policy to suit the personal preferences of Plaintiff, or any of the thousands of other requesters seeking information from the EOUSA, would not be feasible or efficient. It would disrupt EOUSA's ability to process the high volume of requests that are received in a manner that is most beneficial for FOIA requesters as a whole.

15.     EOUSA has carefully balanced the volume of responsive records along with Plaintiffs' interests, while also recognizing and preserving the rights of other litigants and requesters in accessing information they seek. As detailed above, the extremely high volume of other administrative and litigation related FOIA/PA work being handled by EOUSA, and the serial nature of FOIA/PA processing pose an exceptional demand on EOUSA's finite resources. EOUSA assesses that it can address both this demand and Plaintiffs interests through the above-articulated processing policy.

[INTENTIONALLY LEFT BLANK]

16.     EOUSA takes very seriously its responsibilities to the proper administration of the

FOIA/PA program. All reasonable efforts are being made to timely process requests at the

administrative stage and those in litigation, including Plaintiffs FOIA request.

Executed this 7th day of June 2022.


Kara Cain
Attorney-Advisor
Executive Office for United States
Attorneys
Freedom of Information/Privacy Act Staff